## ASAHEL SAUNDERS and DANIEL WINSHIP *versus* JOSHUA FROST.

The owner of land makes a first mortgage to the defei dant, to secure the payment of two notes, one payable in three years, the other in six, with interest annually, — a second mortgage to A, — and a third to A and the two plaintiffs; and A assigns his interest in the two last to the defendant. Before either of the notes to the defendant becomes due, he enters for a breach of the condition to pay interest. *Held*, that the two plaintiffs had properly joined in a bill against the defendant to redeem the two first mortgages.

*Held* also, that the defendant could not be compelled to contribute in paying off the two first mortgages, but that if he did not, and the plaintiffs alone redeemed them, he could not avail himself of his interest in the third mortgage, but the plaintiffs would be entitled to the possession until they were reimbursed his proportion.

*Held* also, that if the defendant elected to hold under the third mortgage, he should contribute to the redemption of the two first in the proportion that his interest in the third bore to the interest of the two other mortgagees.

*Held* also, that the defendant should not apply the rents and profits to the reduction of his debt secured by the third mortgage, he having entered only for a breach of the condition of the first mortgage.

Where a mortgagee enters for the breach of one condition, there being several, the mortgager, by tendering a performance of the condition which has been broken, may prevent a foreclosure; and upon a bill in equity he will be entitled to a judgment for possession, unless the mortgagee, in answer to the bill, sets up his general right under the mortgage, or has declared that he holds for the breach of another condition; in which case a special decree may relieve the mortgager from the effects of the breach for which the entry was made, and leave the mortgagee in possession of his legal rights.

This Court has power, in cases respecting the redemption of mortgages coming within *St.* 1798, *c.* 77, to decree, according to the principles of chancery courts, whatever equity requires between the parties.

Where a mortgagee enters for a breach of a condition to pay interest, and the mortgager tenders the principal, not yet due, together with the interest, and the mortgagee refuses to receive the money, he cannot object that the tender was insufficient in respect to the interest alone, unless he showed a willingness to receive so much only as was due for the interest.

Where a mortgagee enters for a breach of one of several conditions, a tender of performance of that condition accompanied with a demand of a release of the mortgage so far as it was a security for the performance of that condition, is a valid tender.

A mortgagee in possession is not chargeable with rent due from his tenant who absconded, if he has not been guilty of negligence.

Rents received by a mortgagee were directed to be applied as they accrued, to keep down the interest.

A mortgagee is not allowed to charge for insurance effected by him upon the mortgaged premises.

A mortgagee was allowed to charge, as for repairs, the expense of making an aqueduct, the charge being small and it appearing that without the aqueduct the mortgaged premises would not have been supplied with water.

A mortgage is made to secure two sums, payable at different times. The mortgagee enters for non-payment of the sum first due, and the mortgager brings his bill to redeem; and when the other sum falls due, he makes a new tender and files a supplemental bill, but without alleging the new tender. *Held* that this bill was defective, but no answer or plea having been filed, the plaintiff was allowed to amend without costs

In a court of equity, as well as in a court of law, the prevailing party is *primâ facie* entitled to costs.

Upon a bill in equity to redeem, this Court may, (by *St.* 1798, *c.* 77,) at its discretion, award costs to either party, as equity may require; — and where the defendant failed in his defence, having attempted to deprive the plaintiff of his right to redeem, by objections some of which were groundless and unreasonable, and the plaintiff also was in fault, having claimed to have the mortgage discharged when only a part of the money secured by it had become due and payable, neither party was allowed to recover costs.

Saunders
*v.*
Frost.

260

THIS was a bill in equity brought by subsequent mortgagees to redeem the land from two prior mortgages, and to compel the prior mortgagee to release the two first mortgages.

In the hearing, before *Morton* J., the following facts appeared.

On the 24th of April, 1821, Joseph Winship gave to the defendant two promissory notes for 300 dollars each, one payable in three, the other in six years, with interest annually. On the 14th of June, 1821, J. Winship made his mortgage deed to the defendant, to secure the payment of the two notes according to their tenor.

On the 11th of February, 1822, J. Winship made a second mortgage, to one Carew, to secure him for his liability as surety on a note given by J. Winship to one Pynchon. On the 28th of September, 1824, Carew assigned this mortgage to the defendant, there being then due upon the note to Pynchon about 200 dollars, which the defendant paid to Pynchon, the residue of the note having been paid by J. Winship.

On the 16th of June, 1823, J. Winship made a third mortgage to Carew and the two plaintiffs, to secure Carew

and D. Winship for their liability as sureties upon a note given by J. Winship to the Hartford bank, and Carew for his liability as surety upon a note given by J. Winship to the Springfield bank, and to secure the payment of a note given by J. Winship to D. Winship for 568 dollars, and another note given by J. Winship to Saunders for about 556 dollars. On the 20th of September, 1825, Carew assigned to the defendant all his interest in this third mortgage. On the 28th of October, 1823, Carew paid 75 dollars upon the note to the Hartford bank, the residue of which was paid by D. Winship. The note to the Springfield bank, dated June 11th, 1823, for 300 dollars, payable in 57 days, was wholly paid by Carew. On the 19th of January, 1824, J. Winship repaid Carew about 18 dollars. Since the commencement of this suit, viz. on the 31st of May, 1826, J. Winship conveyed to the plaintiffs all his remaining interest in the mortgaged premises.

On the 5th of August, 1823, the interest on the two notes first mentioned not having been paid, the defendant took possession of the premises for condition broken, and continued in possession to the time of the commencement of this suit. During that period the rents and profits received by him, exclusive of one quarter's rent (15 dollars) which the tenant absconded without paying, amounted to about 266 dollars, and the repairs, including 6 dollars 75 cents paid for insurance of the premises and 6 dollars 62 cents paid for making an aqueduct for the accommodation of the house, there being no well, amounted to about 50 dollars.

On the 26th of April, 1826, the plaintiffs tendered to the defendant 800 dollars, to redeem the premises from the two first mortgages.

Upon the foregoing facts, such order or decree was to be passed, as in the opinion of the whole Court justice might require.

The case was argued very fully, first at the bar, at September term 1826, and afterwards in writing, by *Bliss* junior, for the plaintiffs, and *Willard*, for the defendant.

The defendant contended that the suit could not be sustained ;—

1. Because two tenants in common cannot join in a real action. *Rehoboth* v. *Hunt*, 1 Pick. 224; Lit. § 311, 312.— The plaintiffs answered that the suit was not in the nature of a real action, and was not to be trammelled by the technical rules by which real actions are governed; Lit. § 312; Stearns on Real Actions, 198, 199; *Penniman* v. *Hollis*, 13 Mass. R. 430; *Parsons* v. *Welles*, 17 Mass. R. 427; that the plaintiffs could not properly sever; that the joinder was not injurious to the defendant; and that it was beneficial to the plaintiffs, in preventing an action between them for contribution. Co. Lit. 198; *Weller* v. *Baker*, 2 Wils. 423; *Some* v. *Barwish*, Cro. Jac. 231; *Taylor* v. *Porter*, 7 Mass. R. 355.

2. Because one of the two notes first mentioned had not become due, and the defendant ought not to be compelled to receive his money before it was due, and release the two first mortgages, as requested by the plaintiffs when they made the tender. The mortgager voluntarily pledged his estate upon the conditions in the first mortgage, and if he had paid the interest punctually, or tendered it within three years after the defendant's entry, there could have been no foreclosure. The plaintiffs did not offer to pay the interest alone, but they tendered a large sum to redeem the land, and the defendant rightfully refused to receive it, part of it not being then payable. They should have tendered only the sum which was due, and have waited till the rest of the debt became payable, before they brought their bill to redeem. The defendant must be considered as in possession under his general right as mortgagee, as well as for the breach of one of the conditions. *Colman* v. *Packard*, 16 Mass. R. 39; *Wilder* v. *Houghton*, 1 Pick 89; *Perkins* v. *Pitts*, 11 Mass. R. 130. The plaintiffs pray for seisin and possession, and this is the judgment pointed out by *St.* 1798, *c.* 77, under which this bill is brought; and it is the only judgment which the Court have power to render; but such a judgment would be manifestly unjust, so long as any sum secured by the mortgage remains unpaid. *Taylor* v. *Townsend*, 6 Mass. R. 264, 269. The cases of a constructive levy of a writ of possession, notwithstanding the tenant has a right to possession, are where the judgment is against some other person than the tenant; and

Saunders
v.
Frost.

263

in some instances the authority to levy is given expressly by statute. — To this the plaintiffs answered, that the question was not whether the defendant could be compelled to receive the amount of his second note before it became payable, but whether the plaintiffs could, by any proceedings had before that note fell due, prevent a foreclosure. The defendant having given no notice that he held on any other account than for a breach of the condition to pay interest, he must be considered as in possession for that cause alone, and it certainly is equitable, that upon a tender of all the sums due upon the notes secured by the two first mortgages, the plaintiffs should have a bill to redeem. The condition for the payment of interest was in fact performed by the receipt of the rents soon after the defendant entered. *Tirrell* v. *Merrill*, 17 Mass. R. 117. The plaintiffs could not tender the interest due and then wait till the principal became due, before they brought their bill, for by *St.* 1821, *c.* 85, § 3, the bill must be brought within one year after the tender. If the defendant can be considered as holding under the two distinct rights of possession of a mortgagee, the plaintiffs may consistently have a decree to redeem from the possession for condition broken, and may levy an execution for possession, without disturbing the defendant's possession for the sum not yet due. *Perley* v. *Chandler*, 6 Mass. R. 456 ; *Williams* v. *Amory*, 14 Mass. R. 20 ; *Penniman* v. *Hollis*, 13 Mass. R. 429.

3. Because the defendant had a right to apply the rents and profits, at least those which were received after the assignment of the third mortgage, to the extinguishment of his debt secured by that mortgage ; for a subsequent mortgagee may have the rents and profits with the consent of the prior mortgagee. *Newall* v. *Wright*, 3 Mass. R. 138 ; *Goodwin* v. *Richardson*, 11 Mass. R. 474. — To this the plaintiffs answered, that the defendant had no further rights under the third mortgage than his assignor Carew had ; *Hills* v. *Eliot*, 12 Mass. R. 26 ; *Warden* v. *Adams*, 15 Mass. R. 243 ; *Brigham* v. *Eveleth*, 9 Mass. R. 542 ; *Sargent* v. *Parsons*, 12 Mass. R 152 ; that he must apply the rents and profits to the extinguishment of the mortgage under which he held pos

session; that he was not in possession under the third mort-
gage, at least not adversely to the plaintiffs, the possession
of one tenant in common being the possession of all; and
that a mesne incumbrancer may insist upon the rents received
by a prior mortgagee being applied to the prior mortgage.
*Robinson* v. *Cumming*, 2 Atk. 410; *Gould* v. *Tancred*, ibid.
534; *Ld. Penrhyn* v. *Hughes*, 5 Ves. 99; *Tracy* v. *Hereford*, 2 Bro. C. C. 128; *Sherlock* v. *Lowe*, cited in Irish
T. R. 604; *Newall* v. *Wright*, 3 Mass. R. 154; *Coppring*
v. *Cooke*, 1 Vern. 270; *Bentham* v. *Haincourt*, Prec. Ch. 30.

4. Because the plaintiffs were bound to tender enough to
redeem the three mortgages, before they could compel the
defendant to release. — The plaintiffs, on the contrary, contended that the defendant, as tenant in common with them
in the third mortgage, should aid them in redeeming the two
first mortgages; and that the Court would effect this by deducting from the sum to be paid by the plaintiffs such a proportion as the defendant's interest in the third mortgage bore
to that of the plaintiffs. *Deering* v. *Earl of Winchelsea*, 2
Bos. & Pul. 270; *Taylor* v. *Porter*, 7 Mass. R. 358; *Campbell* v. *Mesier*, 4 Johns. Ch. R. 339; *Lawrence* v. *Cornell*,
ibid. 345; *Cheesebrough* v. *Millard*, 1 Johns. Ch. R. 409;
*Stevens* v. *Cooper*, ibid. 425.

In case the suit were maintained, the defendant claimed
allowance under the head of "repairs and improvements,"
(*St.* 1821, *c.* 85, § 1,) of 6 dollars 62 cents for making an
aqueduct on the mortgaged premises. The plaintiffs objected,
and cited *Russell* v. *Blake*, 2 Pick. 506, [2d edit. 505, 506,
507, notes;] *Godfrey* v. *Watson*, 3 Atk. 517; *Moore* v. *Cable*, 1 Johns. Ch. R. 385; *Bonithon* v. *Hockmore*, 1 Vern.
316.

The defendant also claimed allowance of a charge of 6
dollars 75 cents paid by him for insuring the premises against
loss by fire, contending that in case of a loss the mortgager
and his assigns would have the benefit of the sum paid by the
underwriter, which would be applied to the mortgage debt.
This was controverted by the plaintiffs.

The plaintiffs contended that the defendant was responsible
for the quarter's rent remaining due from the tenant who ab-

sconded. *St.* 1785, *c.* 22, § 2. He was guilty of gross negligence in not taking adequate security. — The defendant cited *contra*, Powell on Mortg. 1028, 1029.

265 The defendant, in his account, stated his debt with interest, making annual rests, and the rents and profits without any interest. *St.* 1785, *c.* 22, § 2. But the plaintiffs contended that interest upon interest could not be allowed, and that the rents and profits should be applied, as they accrued, to the principal and interest of the debt. *Howard* v. *Harris*, 1 Vern. 194; *Davis* v. *Higford*, 1 Ch. R. 28; Com. Dig. *Chancery*, 3 *S.* 4; *Ex parte Champion*, 3 Bro. C. C. 440; 1 Mad Ch. Pr. 427; *Digby* v. *Craggs*, Ambl. 612; *St.* 1808, *c.* 98, § 3.

*Sept. 25th, 1827.* PARKER C. J. delivered the opinion of the Court. The rights of the parties to this process require an analysis of the complicated transactions under which they severally claim a decree in their favor.

The first mortgage to Frost was intended to secure two notes of 300 dollars each, one payable in three and the other in six years from the date, *with interest annually.* There remained in Joseph Winship the mortgager only a right of redeeming the estate by paying the interest annually and the principal debts as they became due. No subsequent conveyance by Winship could impair Frost's right to hold the land to secure those objects. But still Winship had an interest, which was a legal subject of contract and transfer. On the 11th of February, 1822, having this right, he conveyed the same in mortgage to Carew, to indemnify him against a note, on which he was surety, to Edward Pynchon. Carew's right then was to redeem the former mortgage, which he could do only by performing the condition of that deed, viz. paying the interest of 600 dollars annually, and the instalments of the principal, according to the condition. Still an interest was left in Winship, which was also a legal subject of contract and transfer. And this interest was on the 16th of June, 1823, legally assigned by another mortgage to the same Carew and the two plaintiffs, to secure them on several liabilities, or debts due to them. The right acquired under this mortgage was to redeem the second mortgage by performing the condition thereof to

Carew, whereby, as legal assignees of that mortgage, they would have a right to redeem the first mortgage by paying the debt due to Frost.

In this state of things, omitting for the present any consideration of Carew's assignment to Frost, it will be well to consider what remedy the two plaintiffs would have, in order to avail themselves of the interest which they had acquired under this third mortgage. And we think they must have severed from Carew in their bill, for his interest as mortgagee of the second mortgage was adverse to theirs, and the process against him must have been compulsory to oblige him to cancel, release, or discharge his mortgage ; and he would have been obliged to contribute to the redemption of the mortgage to Frost, if he would avail himself of his third mortgage ; otherwise he would have the benefit of the security as if he was first mortgagee. And if the two plaintiffs had paid the whole debt to Frost and discharged the second mortgage, they would hold the same as assignees of that mortgage until Carew should have paid his just proportion, deducting however the amount he was entitled to receive under his second mortgage, which must be satisfied in that way, or by payment to him by the plaintiffs, before they could have any benefit from the third mortgage, in which alone they were interested. If he chose not to redeem, as he might from an opinion that the estate was not of sufficient value to pay the amount secured in Frost's mortgage and his own second mortgage, he could not be compelled, but in that case he could not claim any interest in the estate under the joint mortgage to himself and the plaintiffs ; or if it should be considered that he held the legal estate as tenant in common, by bill in equity he might be compelled either to convey to his co-tenants, or to pay his proportion of the sums paid to redeem.

The two present plaintiffs then, by tendering the sum due to Carew on his second mortgage, would be entitled to redeem against Frost, and by paying his debt would have a right to possession of the estate.

It 's to be seen then whether the defendant Frost, by virtue of his assignments from Carew of the two mortgages in which he was a party, stands in a better position against the claims

of the plaintiffs than Carew would if he had not assigned. I is an invariable principle, that an assignee with notice must be subject to all the disadvantages and liabilities of the assignor. The assignment to Frost of Carew's first mortgage was more than a year after the mortgage to the plaintiffs and Carew, and the assignment of Carew's interest in the third mortgage was nearly two years after that mortgage was made ; so that full notice of the rights of the plaintiffs must be presumed. Frost then is to be dealt with as Carew would be ; and he cannot, in virtue of his first mortgage, gain any advantage over the plaintiffs in relation to the third. He took a common interest with them in what remained after satisfaction of the two first mortgages, and was equally bound with them to clear off those incumbrances, provided he would enjoy any interest under the third mortgage. The two plaintiffs then have a right to treat him as mortgagee of the first mortgage, and assignee of the second, and by tendering what is due, to have possession of the estate without regard to his interest in the third mortgage, which interest may be settled in a future process. If he is content with those two debts, he may receive and hold the whole ; but if he claims indemnity under the third mortgage, he must pay his proportion of the sum necessarily paid to make it valid. Nor can he apply the rents and profits of the estate to the reduction of the debt secured by the third mortgage, for he entered only under the first, and his possession and receipt of rents was in virtue of that only.[1] Carew could not by this process have gained an advantage over his co-tenants, and there is no reason why Frost should have a greater privilege.

The principal question then is as to the effect of the tender of the 800 dollars. There was nothing due, at the time of the tender, but one note and the interest which had then accrued on the 600 dollars secured by the first mortgage. The tender can be considered valid only in relation to the interest and the amount of the note which was due, for the mortgagee could not be compelled to receive payment until it became due. He had a right to keep his money at interest according to the contract. But the mortgager must surely have a right

---

[1] See *Gibson* v *Crehore, ante,* 159.

o protect his estate from foreclosure, where the mortgagee has entered for the non-payment of interest only, otherwise his estate may be sacrificed before the payment of the principal becomes due. If the entry be for breach of one condition only, where there are several, some of which have not been broken, the mortgager may restore himself by tendering payment of the interest within the three years upon the whole, and the portion of the principal which has become payable, and he ought to have judgment for possession, unless the mortgagee, in answer to his bill, will set up his general right under his mortgage, in which case a special decree may relieve the estate from the effect of the condition which is broken, and leave the mortgagee in possession of his legal rights. There will then be a decree according to equity and good conscience, within a fair construction of the statute, and though no execution will issue for possession, it is only because the defendant interposes a superior title at law ; or if it be thought necessary, in compliance more strictly with the words of the statute, judgment for possession may be entered, and a stay of execution ordered until further proceedings are had, when the residue of the condition of the deed shall be performed. There is no alternative but to grant execution and put the mortgagee to a new entry on his general title ; for so gross an injustice cannot be allowed, as that the mortgagee shall have it in his power to tie the hands of the mortgager and prevent him from redeeming the estate ; which would be the inevitable effect of giving him a right to enter for non-payment of interest and refusing to the mortgager all power of defeating this attempt to foreclose. Without doubt it was the intention of the legislature, by *St.* 1798, c. 77, to give to the Court general equity jurisdiction in cases of mortgage, so that any decree which may be necessary to effect justice between the parties, is within the authority of the Court to pass ; the Court are to decree and enter up judgment agreeably to equity and good conscience, and to award execution accordingly.[1] If an execution be not necessary or not proper to be issued immediately, still a decree may be passed which

---

[1] See Revised Stat. *c.* 107, § 29.

shall bind the parties to what is determined by the Court to be equity between them ; and either no execution may be awarded, or it may be awarded at some future time, according to the discretion of the Court in the premises.

Thus we think, if the tender of all that was due was sufficient, but the mortgagee still had a right to hold possession by virtue of his legal estate created by the mortgage, or because he subsequently entered or declared that he held for the breach of some other condition, a decree may be made that he shall hold possession, with a view to foreclose, no longer upon the breach of the condition for which the tender was made, but that no execution issue, because of his other claim ; and upon another or supplemental bill, when the other conditions shall have been performed, or tender made of what is due, within the prescribed time, another or further decree may be made, which shall be final between the parties.

Something of this nature was contemplated in the case of *1aylor* v. *Weld*, 5 Mass. R. 125, for by the decree, which among other things awards conditionally a writ of *habere facias*, " the Court reserved a further hearing upon the case, as to the rents and profits, and the making any further decree or decrees relative thereto, as justice may require ; " intending, no doubt, to award execution against the mortgagee fo any surplus of rents and profits beyond what he was entitled to retain for repairs. They must therefore have considered, that on a case coming within the statute, full and complete power was given to the Court to order and decree, according to the principles of chancery courts, whatever real equity required between the parties.

In regard to the validity of the tender, according to the defendant's showing, viz. that only the interest was then due, there can be no objection to the amount. But it is objected that the tender was made for the debt not due, which the defendant was not obliged to receive, and therefore it could not avail as a tender for the interest only. But it appears to us, that in order to avail himself of this objection, the defendant ought to have shown a willingness to take what was due, and to have stated that he claimed to hold possession only for the non-payment of interest. With respect to the

demand of a release, which accompanied the tender, it does not appear that the tender was conditional. The demand was made, because the statute requires, that upon tender of payment a release or other discharge shall be given ; but the defendant showed no willingness to take the money. If he had taken it and then refused to cancel the mortgage, so far as related to its security for the interest then due, a bill would have lain against him, according to the statute. And it would seem that a demand of possession and a release, accompanying the tender, is proper ; for it is a demand of the performance of a duty imposed upon the mortgagee by the statute. So that the case of *Loring* v. *Cook*, cited in the argument, does not apply ; for Cook was not obliged to execute a release or any other instrument, the payment or tender being sufficient, without any act on his part, to defeat his title.

With respect to the mode of accounting, about which there is a controversy, we shall refer the case to a master, unless the parties can adjust the matter upon such principles as we herein state.

If the defendant elects to hold under his third mortgage, he must contribute to the discharge of the other mortgages in the proportion that his interest in that mortgage bears to the interest of the other two mortgagees.[1] If he does not so elect, we think they must pay off the two other mortgages and they will hold the land until they are reimbursed his proportion.

We think he ought not to be charged with the lost rent, as there appears to have been no negligence on his part.

The rents received should be set off against the interest on his prior debts, so that interest may operate equally on both sides.

He is not to be allowed for insurance ; — nor for the aqueduct as repairs, it not appearing that without the aqueduct the farm would not have been supplied with water.[2] [At May term 1828 in Hampden the minutes of the decree were corrected, by allowance of the sum charged for the aqueduct.[3]]

---

[1] See *Gibson* v. *Crehore, ante,* 151, 152.

[2] See *Reed* v. *Reed,* 10 Pick. 398; *Rawlins* v. *Stewart,* 1 Bland, 22

[3] See Revised Stat. *c.* 107, § 15. A motion to vary the minutes of a de

Saunders
v.
Frost.

At this term (September 1827) a bill of revivor and supplement was filed by Saunders and Ruth B. Winship, an infant, by her next friend, representing that Daniel Winship died on the 1st of November, 1826, whereby the suit brought by him and Saunders had abated, and that Ruth was the only child and heir of the deceased;[1] and further representing, that the note given by Joseph Winship to the defendant payable in six years, had become due ; and praying that a decree might be made embracing the whole subject matter of the several bills, according to the rights of the parties at the time of making the decree.

On the 24th of April, 1827, the day when that note became due, the sum of 900 dollars was tendered to the defendant, but this was not stated in the supplemental bill.

The Court (at May term 1828) said this bill was defective ; it should set out the new tender ; but as no answer or plea had been filed, the plaintiffs might have leave to amend without costs.

Upon the question of costs the following opinion was drawn up by

May term
1828, in
Hampden.

WILDE J. In actions at law the prevailing party is entitled to costs, although he does not prevail to the full extent of his claim. Thus if the plaintiff in an action recovers only a part of his demand, he will nevertheless be allowed costs ; which has been found in some instances, though not frequently, to operate inequitably. Generally the defendant may protect himself by tendering the sum due, and if the plaintiff refuses to accept it, he will proceed at his peril ; so that cases rarely occur in which a party can reasonably complain of the general provision of law as to the taxation of costs.

In suits in equity, however, the Court is authorized, at its discretion, to award costs to either party, as equity may require, and it cannot be doubted, that such a discretion is

cree in Chancery may be received at any time before a final decree is made and recorded. *Gibson* v. *Crehore, ante,* 156.

[1] See *Putnam* v. *Putnam,* 4 Pick. 139.

peculiarly proper to be exercised by a court of equity.[2] But in the exercise of this legal discretion we must not lose sight of the general rule as to the taxation of costs, which ought not to be departed from, unless equity clearly requires it ; for in courts of equity, as well as in courts of law, generally the prevailing party is entitled to costs. *Primâ facie* the party who fails must pay costs, and it depends on him to show the existence of circumstances in a sufficient degree to displace the *primâ facie* claim of costs. 2 Mad. Ch. Pr. 415. And Lord *Eldon* regrets that he could not feel at liberty to establish the rule universally prevailing at law, that costs should abide the event of the suit. *Vancouver* v. *Bliss*, 11 Ves 462.

In this case we consider the plaintiffs as the prevailing party, and the question is whether there are ary circumstances appearing in the case to show an equitable claim on the part of the defendant to an allowance of costs in his favor. The defendant however principally relies on a rule adopted by the English courts of equity, which is, that the mortgagee shall recover his costs, unless it appears that the suit has been occasioned by the unreasonable or fraudulent conduct on his part, and that in no case is he liable to pay costs.

The first branch of this rule seems to be fully supported by the cases cited ; but it is not clearly settled that the mortgagee shall in no case be charged with the costs, although the current of the English cases seems to maintain the rule to this extent. The chancellor so considers it in the case of *Detillin* v. *Gale*, 7 Ves. 583, and yields to its authority, although he manifestly thinks it opposed to the principles of equity. " It is," says he, " a very clear moral proposition, that the mortgagee ought to pay all costs his unnecessary and oppressive dealings have occasioned." If then the English rule is unreasonable and inequitable, we clearly are not bound to adopt it. On the contrary, admitting it to be a rule opposed to a " clear moral proposition," we are bound by the highest obligation of official duty to reject it. We do not adopt the English rules of practice indiscriminately, but only as they appear reasonable and conformable to the spirit of our system of

---

[2] See Revised Stat. *c*. 121, § 20, and *c*. 107, § 19.

HAMPSHIRE, FRANKLIN AND HAMPDEN.

jurisprudence and general rules of practice. Now the rule, that the mortgagee is under no circumstances chargeable with costs, is not only unreasonable, but directly opposed to the statute of 1798, c. 77, which expressly authorizes the Court, " at their discretion, to award costs to either party, as equity may require." This discretion could not be exercised, if we were fettered by the English rule.

The only question therefore is, what does equity require. And in the first place, we think it does not require us to award costs in favor of the defendant, since, as it appears to us, they have been principally occasioned by the unjust attempt on his part to foreclose the mortgage, and through a supposed defect in the law, to deprive the plaintiffs of their right to redeem.

The defendant made four points of defence at the trial. He contended, 1. That a suit in equity could not be maintained between tenants in common : 2. That the defendant had a right to apply the rents and profits towards the extinguishment of the third mortgage : 3. That the plaintiffs could not redeem without tendering all that was due to defendant on the three mortgages : and 4. That the defendant was not compellable to receive his debt before it became due, and consequently that he was not bound to discharge the mortgage. The three first objections we consider wholly groundless. The first objection might be well founded in a court of law, but even at law ejectment will lie by one tenant in common against a co-tenant after an ouster. Whether the taking possession by the defendant, and keeping it, under the circumstances of the case, was equivalent to an actual ouster, might be doubted. But in courts of equity this nice distinction of the common law is disregarded, and no principle or reason, recognised by courts of equity, has been suggested in support of this objection. So the claim of the defendant to appropriate the rents towards the third mortgage, when he held under a prior mortgage, is unsupported by law or equity. And the third objection is equally unsupported. The last objection had more weight, and was a fair subject of discussion. But it was not sufficient to bar the plaintiffs' action, as has been already decided.

The defendant also objected to the jurisdiction of the

Court under the statute of 1798, and has intimated a wish again to be heard on this point. But we are satisfied with our former decision.

The defendant then having failed in his defence, and having interposed objections to the plaintiffs' title, some of which were groundless and unreasonable, would not be entitled to costs, even under the English rule. We do not, however, impute to the defendant any unworthy motives. It is difficult, we are well aware, for any one to exercise an impartial judgment in his own cause, or in that of a client's ; but if the defendant has mistaken the law, and has attempted to defeat the plaintiffs' right to redeem, against equity and the manifest justice of the case, there is no color for his claim of indemnity for the expenses incurred in such an unsuccessful attempt : an attempt manifestly unjust, whatever might have been his opinion as to his legal rights.

The remaining question to be considered is, whether costs ought to be allowed in favor of the plaintiffs. If this were a suit at law, no doubt the plaintiffs would be entitled to costs as the prevailing party, although they have not prevailed to the full extent of their claim. But where both parties are in fault, as is the case here, the rule of equity is against the allowance of costs to either party. The plaintiffs' demand to have the mortgage discharged was wholly unfounded, and how far this groundless claim contributed to increase the expense of litigation we cannot determine. The defendant was justified in resisting this claim, and if he had done nothing more, he would clearly be entitled to costs. But taking into view all the circumstances of the case, we are of opinion that neither party has made out an equitable title to costs, and that their respective claims therefor must be disallowed.[1]

---

[1] See *Clark* v. *Reed,* 11 Pick. 449.